UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE SCOTTS COMPANY,
    Plaintiff,
v.

CIVIL ACTION
No.03-CV-12316-NG

U.S. HORTICULTURAL SUPPLY,
INC., (f/k/a E.C. GEIGER, INC.
a/k THE GEIGER COMPANIES),
    Defendant,

-and-

BANKNORTH, N.A.,
    Trustee/Process
    and Reach and
    Apply Defendant.

## MEMORANDUM OF LAW OF DEFENDANT U.S. HORTICULTURAL SUPPLY, INC. IN SUPPORT OF MOTION TO DISMISS

Defendant U.S. Horticultural Supply, Inc. ("USH"), through its counsel, submits the following memorandum of law in support of its motion to dismiss. For the reasons that follow, The Scotts Company's ("Scotts'") verified complaint should be dismissed with prejudice, and the temporary restraining order entered by the Massachusetts Superior Court should thereby be dissolved.

### I.    INTRODUCTION

This action was brought by Scotts in an attempt to "reach and apply" the funds held in an escrow account in Vermont belonging to USH.[1] As discussed herein, Scotts is not entitled to "reach and apply" the funds under Fed. R. Civ. P. 64 ("Rule 64") or under the Massachusetts

---

[1] True and correct copies of Scotts' verified complaint, its *ex parte* motion for a temporary reach and apply attachment/injunction, and the order granting Scotts' motion are attached

reach and apply statue, M.C.L. 214, §3 ("the Reach and Apply Statute"). Accordingly, Scotts' verified complaint must be dismissed and the temporary restraining order against Banknorth N.A. ("Banknorth"), the escrow agent, dissolved.

Furthermore, preliminary relief in this action is unwarranted and would improperly invade the province of Judge Robert Duncan, the arbitrator in Columbus, Ohio scheduled to hear the claim underlying Scotts' reach and apply claim six weeks from now. Preliminary relief is also unwarranted as a claim has been made against the funds at issue, which must be resolved before the funds could be released in any event.

## II. FACTUAL BACKGROUND

### A. The Parties and the Underlying Disputes

Scotts is a manufacturer of horticultural products, and USH is a distributor of horticultural products. See Scotts' Verified Complaint, Exhibit "A" at ¶ 4. In December 1996, USH and Scotts entered into a certain "Horticultural Products Distribution Agreement" ("Distributor Agreement") that gave USH the right to distribute various Scotts horticultural products.[2] See Ex. "A" at ¶ 5. In section 9 of the Distributor Agreement, Scotts and USH agreed to arbitrate any disputes relating to the Agreement.[3] See Ex. "A." at ¶ 23; see Ex. "B" at ¶ 9.

---

    to the accompanying Affidavit of Monica S. Mathews ("Mathews Affidavit") as Exhibit "A." References to "Exhibit" or "Ex.." in this statement of facts are to the exhibits to the Mathews Affidavit.

2    A true and correct copy of the Distributor Agreement is attached to the Mathews Affidavit as Exhibit "B." The complaint refers to and relies on the terms of the Distributor Agreement. Its reach and apply action depends on an alleged breach of the agreement. Therefore, it is proper for this court to consider the Distributor Agreement in ruling on the motion to dismiss. Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Company, 267 F. 3d 30, 33 (1st Cir. 2001); Clorox Company Puerto Rico v. Procter and Gamble, 228 F.3d 24 (1st Cir. 2000); Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Perry v. New England Business Service, Inc., 2002 WL 31399132 (D. Mass. Oct. 22, 2002).

3    Section 9 provides in relevant part: "[a]ll disputes, controversies, or differences which

2

For nearly five years, the distributor relationship between USH and Scotts was mutually profitable and, indeed, USH was among Scotts' best performing distributors, routinely earning volume-based discounts and sales bonuses for selling more Scotts products than most of Scotts' other distributors.[4] See Exhibit "C" at ¶ 26. It was natural, then, that, during the Summer and Spring of 2002, when Scotts promised USH that Scotts would either renew the Distributor Agreement or enter into another, similar distribution contract, USH relied upon that promise in planning for the then-upcoming 2003 growing season. See Exhibit "C" at ¶¶ 27, 32-35.

Nevertheless and without explanation, Scotts terminated the Distributor Agreement on or about September 5, 2003, breaching of all of its promises, representations and assurances that it would extend its distributor arrangement with USH. See Exhibit "C" at ¶ 35. Scotts immediately began demanding payment of $1,359,431.62, which it claimed USH owed for horticultural products purchased pursuant to the Distributor Agreement. See Scotts' Verified Complaint, Ex. "A" at ¶ 19. USH has not acknowledged in writing that any amount is due and owing to Scotts.[5] See Exhibit "D" at ¶ 12. Quite the contrary, USH denies owing any amount to Scotts.[6] See Ex. "D" at ¶ 12.

---

      may arise between the parties, in relation to or in connection with the Agreement, or for the breach hereof, shall be subject to binding arbitration in Columbus, Ohio."

[4] A true and correct copy of USH's amended complaint filed in the United States District Court for the Eastern District of Pennsylvania is attached to the Mathews Affidavit as Exhibit "C." The amended complaint is an official public record and therefore properly considered on a motion to dismiss. Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Company, 267 F. 3d 30, 33 (1st Cir. 2001).

[5] A true and correct copy of the Answer and counterclaims of respondent/counterclaimant U.S. Horticultural Supply, Inc. in the Ohio Arbitration, also an official public record, is attached to the Mathews Affidavit as Exhibit "D."

[6] Scotts demanded this amount as early as October 2002, even though many of the products purchased by USH were subject to a discount program, under which payment was not due for 9 months after the order was placed - which in many cases was not until the Summer of 2003.

3

In February 2003, USH filed an action in the United States District Court for the Eastern District of Pennsylvania ("the Pennsylvania Action"), Civ. A. No. 03-773, asserting four claims against Scotts, two of which were claims based on Scotts' breach of its promises, representations and assurances that USH would continue to distribute Scotts' products. See Ex. "C." In its motion to dismiss that was filed in that action, Scotts argued that USH's two promissory estoppel claims were made under or in relation to the Distributor Agreement, and as such, were arbitrable under § 9 of the Distributor Agreement.[7] At about the same time, Scotts filed an action in the United States District Court for the Southern District of Ohio ("the Ohio Action"), Civ. A. No. C2-03-307, demanding arbitration of its claim for payment under the Distributor Agreement.[8] On October 20, 2003, the Honorable Algernon Marbley of the Southern District of Ohio directed the parties to arbitrate Scotts' breach of contract claim.[9] To avoid the possibility that the parties could be simultaneously engaged in two separate arbitrations in Ohio, while also proceeding in the Pennsylvania Action, USH withdrew its two promissory estoppel claims from the Pennsylvania Action and the parties have agreed and stipulated to an order under which USH's two claims will be arbitrated together with Scotts' claim for amounts it alleges are due under the Distributor Agreement, in a single arbitration proceeding in Columbus, Ohio ("the Ohio Arbitration").[10]

---

[7] A true and correct copy of Scotts' motion to dismiss Count I and motion to dismiss or, in the alternative, stay Counts II and III pending arbitration, another official public record, is attached to the Mathews Affidavit as Exhibit "E."

[8] A true and correct copy of Scotts' complaint (without exhibits) filed in the Ohio Action, also an official public record, is attached to the Mathews Affidavit as Exhibit "F."

[9] A true and correct copy of the October 20, 2003 order, an official public record, is attached to the Mathews Affidavit as Exhibit "G."

[10] A true and correct unsigned copy of the parties' stipulation, an official public record, is attached to the Mathews Affidavit as Exhibit "H."

In Ohio, the arbitration process is well underway. On November 7, 2003, USH and Scotts selected the Honorable Robert Duncan, a former judge of the United States District Court for the Southern District of Ohio and of the Supreme Court of Ohio, to serve as arbitrator for all three claims.[11] Judge Duncan has conducted weekly meetings with USH and Scotts to, among other things, establish procedural rules for the arbitration in Columbus, which is scheduled to begin on February 2, 2004. Through these weekly meetings Scotts and USH have stipulated to a discovery order, which provides discovery deadlines and restrictions and giving defined procedural rights to both Scotts and USH.[12] Under that same order, Scotts and USH have exchanged document requests and are scheduled to produce documents on December 29, 2003. See Ex. "J." Scotts and USH have further agreed to a limited number of depositions and an expedited pretrial schedule with the mutual understanding that the Arbitration will begin on February 2, 2004. See Ex. "J." Whether Scotts is entitled to judgment on its $1.3 million claim against USH, whether USH is entitled to judgment on its claims against Scotts, and which of the parties may owe the other the net amount of those judgments, will all be decided in the Ohio Arbitration, will not be decided in this action, and are not a proper subject of this case.

### B. The Escrowed Funds and Scotts' Reach and Apply Action

On October 31, 2002, USH and Griffin Greenhouse Supplies, Inc. ("Griffin") entered into an asset purchase agreement ("Asset Purchase Agreement"), whereby USH sold certain of its operating assets Griffin.[13] In connection with the Asset Purchase Agreement, on October 31,

---

| | |
|---|---|
| 11 | A true and correct copy of the Order (an official public record) recommending the appointment of Judge Duncan as arbitrator in the Ohio Action is attached to the Mathews Affidavit as Exhibit "I." |
| 12 | A true and correct copy of the Arbitration order is attached to the Mathews Affidavit as Exhibit "J." |
| 13 | A true and correct copy of the Asset Purchase Agreement is attached to the Mathews Affidavit as Exhibit "K." The complaint relies on and refers to the Asset Purchase |

5

2002, USH and Geiger also entered into an escrow agreement ("Escrow Agreement") whereby Griffin placed $100,000 ("the Escrowed Funds") of the proceeds of the Asset Purchase Agreement into an escrow account in Vermont at Banknorth, N.A, as security for USH's indemnification obligations under the Asset Purchase Agreement, should any arise.[14] Subject to any claims for indemnification made by Griffin, the Escrowed Funds were to be released to USH on the one-year anniversary date of the closing date of the Asset Purchase Agreement, October 31, 2003. See Ex. "L" at § 3.

On October 30, 2003, Scotts advised Griffin that it intended to hold Griffin liable as a successor in interest to USH for amounts Scotts claims it is owed by USH, and provided Griffin with a draft complaint purporting to assert a claim against Griffin as a successor in interest of USH, for the amount that Scotts claims it is owed by USH. In response, both Griffin and USH invoked the Asset Purchase Agreement's dispute resolution clause, which requires formal resolution of the dispute regarding the Escrowed Funds before Banknorth is permitted to distribute the Escrowed Funds. As a result, the Escrowed Funds remain in escrow and it is these funds that are the subject of this action.

Nonetheless, on November 5, 2003, Scotts filed a verified complaint in the Superior Court of the Commonwealth of Massachusetts against USH and Banknorth N.A. as "trustee process/Reach-and-apply defendant," seeking to attach the Escrowed Funds pursuant to Mass. G. L. ch. 214, § 3 ("the Reach and Apply Statute"). At the same time, Scotts filed an *exparte* motion for a temporary reach and apply attachment/injunction, which was granted by the

---

Agreement, e.g., in paragraphs 6 and 8, and it is therefore properly considered on this motion to dismiss. See supra note 2.

14  A true and correct copy of the Escrow Agreement is attached to the Mathews Agreement as Exhibit "L." It governs the "Escrow Fund" referred to by, and central to, the complaint, and is also properly considered on a motion to dismiss. See supra note 2.

6

Superior Court. On November 19, 2003, USH removed Scotts' action to this Court pursuant to 28 U.S.C. § 1441, leaving intact the temporary restraining order issued on November 5, 2003 by the Superior Court. See 28 U.S.C. § 1450.

USH now moves for dismissal of the verified complaint and, necessarily, dissolution of the temporary restraining order, inasmuch as Scotts in not entitled, as a matter of law, to injunctive relief by application of Rule 64 or under the Reach and Apply Statute.

## III. ARGUMENT

### A. The Legal Standard for a Motion to Dismiss

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (citations omitted). In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." Id. at 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)).

In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir.1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988)); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir.1999). Moreover, courts "will not accept a complainant's unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar

7

Foundation, 993 F.2d 962, 971 (1st Cir.1993). As set forth fully below, Scotts' verified complaint seeks relief not available to it as a matter of law, and as such, USH's motion to dismiss should be granted.

### B. Scotts' Verified Complaint Must Be Dismissed

Scotts' verified complaint filed in this action must be dismissed because Scotts is not entitled to reach and apply USH's assets under Fed. R. Civ. P. 64 or the Reach and Apply Statute. First, the literal language of Rule 64 limits equitable remedies to those "made for the purpose of securing satisfaction of a judgment ultimately to be entered in the action" in which temporary relief is being sought. In this case, the Court cannot resort to state attachment remedies to support, on the authority of Rule 64, the continuance of injunctive relief because no judgment can ever be entered in this action, inasmuch as Scotts' underlying claim will be adjudicated and judgment entered, if at all, in the arbitration proceeding in Ohio. Second, even if Rule 64 could be stretched to apply to this action, Scotts is not entitled to "reach" the Escrowed Funds under the Reach and Apply Statute, since Scotts' claim is not reduced to a judgment nor is it a "debt" within the meaning of the Reach and Apply Statute. Finally, Scotts' verified complaint must be dismissed because sustaining preliminary relief in this case would constitute an inappropriate extension of the Reach and Apply Statute under Massachusetts law.

    1.    The Literal Language Of Rule 64 Precludes the Court from Sustaining Scotts' Injunctive Relief In This Case

Pursuant to Rule 64, a district court may grant any provisional remedy available under the law of the state in which the court is held, unless the remedy is inconsistent with any federal statute or the Constitution. See In re Rare Coin Galleries of America, Inc., 862 F.2d 896, 903

8

Accordingly, the literal language of Rule 64 does not allow Scotts to seek injunctive relief either from the Massachusetts state or federal courts, as there is no judgment "ultimately to be entered in the action" in either the state or federal courts in Massachusetts. Rather, any judgment in Scotts' favor, if indeed one is ultimately entered at all, will be entered in the Arbitration in Ohio. Thus, Rule 64 prevents this Court from sustaining injunctive relief in this action, and as such, Scotts' verified complaint must be dismissed and the temporary restraining order dissolved. Fed.R.Civ.P. 64; see also Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 147 F.R.D. 66, 67 (S.D.N.Y. 1993)(the power to grant the prejudgment and other such provisional relief flows from the court's inherent power to grant the ultimate relief sought).

    2.    Scotts is not Entitled to Reach and Apply the Escrowed Funds under the Massachusetts Reach and Apply Statute

Even if the Court determines that it can entertain Scotts' request for injunctive relief pursuant to Rule 64, the Court is constrained to award only those provisional remedies available under Massachusetts state law. See In re Rare Coin Galleries, 862 F.2d at 903; Fed.R.Civ.P. 64.

Under Massachusetts law, a creditor may "reach and apply" the assets of a debtor in one of two ways. A creditor's first remedy is the traditional one available to judgment creditors who have been unable to execute on the defendant's assets. In re Rare Coin Galleries, 862 F.2d at 904. This traditional remedy is not available to Scotts in this case because Scotts has not obtained a judgment on the underlying dispute. See id.

The second type of "reach and apply" remedy is statutory in nature, and is set forth in Massachusetts' Reach and Apply Statute. See Mass. G. L. ch. 214. Under § 3(6) of the Reach and Apply Statute -- the only section of the Reach and Apply Statute arguably available in this

---

subject matter jurisdiction to allow this Court to entertain this dispute.

10

action -- Scotts must establish as a threshold matter (1) the indebtedness of USH and (2) that USH has property that can be reached by Scotts in satisfaction of USH's debt. See Mass G. L. ch. 214, § 3(6); Papamechail v. Holyoke Mut. Ins. Co., 8 Mass.App.Ct. 849, 852, 397 N.E.2d 1153, 1156 (1979).

To establish indebtedness, however, Scotts must do more that allege a breach of contract; it must show that there is an underlying "debt," as defined in the Reach and Apply Statute, running from USH to Scotts. See Hunter v. Youthstream Media Networks, Inc., 241 F. Supp. 2d 52, 57 (D. Mass. 2002). In an early case, the Supreme Judicial Court of Massachusetts discussed the precise meaning of the word "debt" under the reach and apply statute in effect at that time,[18] in a suit "to reach and apply property of the defendant in payment of an alleged debt in the nature of damages arising from the breach of a contract." See Hunter, 214 F. Supp. 2d at 58 (interpreting H.G. Kilbourne v. Standard Stamp Affixer Co., 216 Mass. 118, 119, 103 N.E. 469, 470 (1913)). Noting at the outset that there was no liquidated damages clause in the contract and that the damages were undetermined, the Kilbourne court held that

> [t]he word 'debt' has never been made to include the simple possibility of being found responsible in damages for the breach of an executory contract where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered.

Kilbourne, 216 Mass at 122, 103 N.E. at 471; In re Rare Coin Galleries, 862 F.2d at 904 (defining "debt" under an earlier version of §3(6)). In In re Rare Coin Galleries, the First Circuit adopted the Kilbourne court's definition of "debt," and held that, even if broadly construed, "debt" does not include a pending breach of contract claim not reduced to judgment. In re Rare

---

18  The Reach and Apply Statute as it reads now is "identical in all pertinent respects" to the statute as it read when construed by the Kilbourne court, compare Mass. G. L. ch 214, § 3(6) with 1910 Mass Acts 480-81. See In re Rare Coin Galleries, 862 F.2d at 904.

11

Coin Galleries, 862 F.2d at 904.

In this case, injunctive relief is not available to Scotts under the Reach and Apply Statute because Scotts cannot demonstrate that it has a "debt" as defined by § 3(6), inasmuch the underlying action in Ohio is a breach of contract action which has not been reduced to judgment, and the issues of liability and damages are vigorously contested in the Ohio proceeding and have yet to be adjudicated. Indeed, USH has asserted viable defenses to Scotts' breach of contract claim, and has asserted two counterclaims against Scotts in the Ohio Arbitration. Thus, even if USH is ultimately held to have breached the Distributor Agreement and caused Scotts some damages, USH maybe entitled to damages from Scotts that, when setoff against any damages USH owes to Scotts, will eliminate any amounts Scotts might otherwise be entitled to. As such, any amounts due Scotts under its breach of contract claim against USH are hardly uncontested or certain in any way. Accordingly, Scotts is not entitled to "reach and apply" the Escrowed Funds, and the verified complaint must be dismissed and the temporary restraining order must be dissolved. See Hunter, 214 F. Supp. 2d at 58 (denying relief under the Reach and Apply Statute and finding that a "debt" was not established, because the parties hotly contested whether liability existed and disputed issues of fact remained to be resolved); In re Rare Coin Galleries, 862 F.2d at 904 (reach and apply relief on a breach of contract claim unavailable because the claim had not been reduced to judgment); cf. GMAC v. Camilleri Bros. Chevrolet of Holyoke, Inc., 188 F. Supp. 2d 73, 76 (D. Mass. 2001) (applying § 3(6) of the Reach and Apply Statute to a breach of contract action because liability and damages were undisputed).

3.  **The Nature of Relief Scotts Seeks in this Action is not in the Nature of Relief Traditionally Available under the Reach and Apply Statute**

It has long been the law of Massachusetts that an action to "reach and apply" may not be maintained as an adjunct to an action pending in another court for the purposes of gaining "all of the advantages of practice and procedure afforded by both jurisdictions, and thereby combine benefits of procedure to which it is not entitled in the courts of either jurisdiction alone." Consolidated Ordinance Co. v. Marsh, 227 Mass. 15, 22, 116 N. E. 394, 396 (1917). Indeed, the Massachusetts Reach and Apply Statute was not designed for that purpose. Consolidated, 227 Mass. at 23, 116 N. E. 396.

In Consolidated, the creditor plaintiff attempted to proceed with an action at law on its underlying claim in federal court and then filed a claim in state court, sounding in equity, in an attempt to reach assets it could not otherwise reach at law in the federal action. Consolidated, 227 Mass. at 19, 116 N. E. 394. In holding that creditors cannot simultaneously proceed with one action at law to establish an underlying debt and another in equity to reach assets not with the first court's jurisdiction, the Consolidated Court held that

> [the reach and apply statute] was not designed for such a purpose. That statute was designed to afford its unusual benefits to a creditor who invokes the jurisdiction of our courts to establish his debt. It is not a statute which offers unusual process as ancillary to proceedings to establish the main debt in another court, or in the court of another jurisdiction. There is a well known equitable remedy for the collection of a judgment by means of a creditor's bill. But that is not the remedy provided by this statute and it cannot be instituted until a judgment has been obtained.

Consolidated, 227 Mass. at 23, 116 N. E. 396.

In this action, Scotts is attempting to do precisely what the creditor in Consolidated attempted: to attach assets outside of the jurisdiction of the Ohio court because the Ohio court does not have jurisdiction over the assets. That is clearly beyond the scope of the remedies

13

available under the Reach and Apply Statute. See id. Accordingly, Scotts cannot be permitted to utilize this action to accomplish what it could not otherwise accomplish as an ancillary action to the Ohio Arbitration. Scotts' verified complaint must, therefore, be dismissed and the temporary restraining order must be dissolved.

## IV.   CONCLUSION

For all of the foregoing reasons, USH respectfully requests that the Court dismiss the verified complaint with prejudice, thereby dissolving the temporary restraining order issued by the Superior Court for the Commonwealth of Massachusetts in this action. A proposed order is attached.

Respectfully submitted,

U.S. HORTICULTURAL SUPPLY, INC.

By its attorneys,

_____
Lisa C. Goodheart, Esquire (BBO# 552755)
Bruce E. Falby, Esquire (BBO# 544143)
PIPER RUDNICK LLP
One International Place, 21st Floor
100 Oliver St.
Boston, MA 02110-2600
(617) 406-6000

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 12/19/03
_____

Of Counsel:

Timothy C. Russell, Esquire
Monica S. Mathews, Esquire
Spector Gadon & Rosen, P.C.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8888

Dated: December 19, 2003

14