UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SCOTTS COMPANY,<br>                    Plaintiff<br>      v.<br><br>U.S. HORTICULTURAL SUPPLY, INC.<br>(f/k/a E.C. Geiger, Inc. a/k/a The Geiger Companies),<br>                    Defendant<br>and<br><br>BANKNORTH, N.A.,<br><br>                  Trustee Process/Reach<br>                  and Apply Defendant. | CIVIL ACTION<br>No. 03-CV-12316-NG |

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
and
REQUEST FOR ORAL ARGUMENT

I. INTRODUCTION

This action was brought by The Scotts Company ("Scotts") to secure the only known assets available to satisfy an acknowledged debt of $1,359,431.62. Under the circumstances facing this Court, the relief requested from, and granted by, the Superior Court was proper and should be maintained. More importantly, under well-settled principles of law, Scotts is entitled to maintain this action and the motion to dismiss must be denied.

As set forth in the Verified Complaint, Scotts is a manufacturer of consumer and professional horticultural products. *See* Verified Complaint, ¶ 4. On September 30, 2002, a Distributor Agreement that Scotts had entered with U.S. Horticultural Supply, Inc. ("Geiger") expired by its own terms. *Id.,* ¶ 5. On October 31, 2002, Geiger's President acknowledged in writing that it owed Scotts $1,359,431.62 for product that Scotts had shipped to Geiger under the Distributor Agreement. *Id.,* ¶¶ 12-14.

On November 1, 2002, Geiger disposed of all of its operating assets and ceased all business activities. *Id.*, ¶¶ 15-16. $100,000 from the transaction was placed in escrow with BankNorth. *Id.*, ¶ 15. To date, Geiger has refused to pay its acknowledged debt to Scotts. *Id.*, ¶¶ 17-20, 27-30.

## II. ARGUMENT

Geiger acknowledges owing Scotts $1,359,431.62 and one of the few assets it has is $100,000 presently being held in escrow by BankNorth. Under well-settled principles of Massachusetts and federal law, Scotts is entitled to secure the escrow funds.

### A. **Standards for deciding a motion to dismiss**

Although Geiger attempts to stretch the limits of what this Court may properly consider on a motion to dismiss, the standards guiding the Court's decision are well-settled.

#### 1. *Legal standards*

When evaluating a motion to dismiss, "the Court must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party." *McGrath v. MacDonald*, 853 F. Supp. 1, 3 (D. Mass. 1994) (quoting *Hathaway v. Stone*, 687 F. Supp. 708, 710 (D. Mass. 1988). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McGrath*, 853 F. Supp. at 3 (quoting *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir. 1977)); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (issue on motion to dismiss is not whether plaintiff will ultimately prevail, but whether, construing complaint liberally, plaintiff should be entitled to offer any evidence in support of his claims).

> 2. *On a motion to dismiss, the Court should disregard Geiger's attempt to rely almost exclusively on self-serving facts taken from documents not before this Court*

Geiger elected to respond to the Complaint by filing a motion to dismiss, thereby leaving the allegations of the complaint unchallenged. The general rule is well-settled: When deciding a motion to dismiss for failure to state a claim, the court should only consider the allegations of the complaint. *See McGrath*, 853 F. Supp. at 2-3 (citations omitted).

However, Geiger bases much of its argument on self-serving statements contained in documents not appended to or referred to in the Complaint and, thus, improper for motion to dismiss purposes. Most notably, it bases its motion on an attempt to explain away its written acknowledgement that it owes Scotts a debt in excess of $1.3 million. Such a position simply cannot be maintained based on the allegations of the Complaint, which expressly set forth allegations to the contrary.[1]

As Geiger points out, the First Circuit has held that it may be proper to consider certain types of documents outside the complaint when deciding a motion to dismiss. *See, e.g., Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001). However, Geiger fails to mention that the First Circuit itself denominated this a "narrow exception" to the general rule, limited only to "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs claim; or for documents sufficiently referred to in the complaint." *Id.* at 33-34. In fact, the *Alternative Energy* court noted that the district court in that case had allowed a motion to strike a prior complaint offered by the defendant in that case. *Id.* at 34 n.2.

---

[1] If Geiger desires to turn its motion into one for summary judgment, then the consideration of extraneous facts may be proper for consideration. However, in such event, Scotts would ask for a full and fair opportunity to present a complete factual record in response to a motion for summary judgment.

3

Indeed, the pleadings Geiger purports to rely upon (such as its Pennsylvania complaint and its Ohio answer) are, in essence, tantamount to an affidavit submitted on its behalf to challenge the factual allegations of the Complaint. It is well-settled that such affirmative statements of evidence should not be considered on a motion to dismiss. *See In re Digital Equipment Corporation Securities Litigation*, 601 F. Supp. 311, 312 (D. Mass 1984); *see also McGrath*, 853 F. Supp. at 2-3 (noting that a report offered by party during pleadings on motion to dismiss was not an appropriate subject for consideration on motion to dismiss).[2] The instant motion must be decided based on the allegations in the Complaint, viewed favorably to Scotts.

### B. Scotts has plead facts entitling it to the relief it seeks

Viewing the Complaint in the appropriate context, it simply cannot be said that Scotts has no hope of establishing that BankNorth has funds in its possession which are properly the subject of an attachment, equitable or otherwise.

Geiger's papers discuss one (1) of the two (2) bases upon which 'traditional' pre-judgment attachments may be obtained under Massachusetts law, focusing exclusively on the judgment creditor scenario. Notably absent from its papers is any discussion of the "insolvency" basis for pre-judgment attachment, which is expressly cited to and discussed in the main case relied upon by Geiger, and which provides that no prior "judgment" is necessary if a showing is made that the defendant is insolvent. There is no question that the Complaint, read most favorably to Scotts as it must be at this time, establishes that Geiger is insolvent. *See* Verified Complaint, ¶¶ 15-20, 27-30. Thus, Massachusetts law permits a 'traditional' reach and apply injunction. Moreover, given the written acknowledgement by Geiger of its debt to Scotts, the 'statutory' remedy is also available under Massachusetts law.

---

[2] At most, the pleadings from other litigation can be viewed by the Court simply for the fact that they were filed. The allegations asserted by Geiger in those pleadings cannot be viewed as established "facts" for purposes of determining whether the complaint in this case must be dismissed.

4

1. *The Complaint establishes Geiger's insolvency*

Throughout its papers Geiger cites liberally from *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896 (1st Cir. 1988). Geiger relies on this case for stating both that the 'traditional' remedy is available only to plaintiffs who have secured a judgment and that the 'statutory' remedy is available only to a plaintiff who has established a "debt." *See* Geiger Memo of Law, pp. 10-11. However, notably absent from Geiger's papers is any discussion of the court's statement that a plaintiff seeking the traditional remedy need not obtain a judgment first if the defendant is insolvent. The full discussion by the *In re Rare Coins* court on the 'traditional' remedy is as follows:

> Massachusetts law provides for two types of bills to reach and apply. The first type is a traditional remedy available to *judgment* creditors who have been unable to execute on the defendant's assets..... **There is an exception: the plaintiff need not obtain a judgment first if the defendant is insolvent**.... This remedy is not available in the instant case because the trustee has not obtained a judgment nor has he made any showing that Vinick & Young is insolvent.

*In re Rare Coins*, 862 F.2d at 903-04 (citations omitted) (italics in original, bold emphasis added). Geiger would have this court ignore the clear exception to the general rule upon which it relies.

Of course, this exception is not a creature of Massachusetts law, but derives from well-settled principles set forth by the United States Supreme Court:

> [I]t was said in *Case v. Beauregard*, 101 U.S. 688, 690-91, that it "has been decided that where it appears by the bill that the debtor is insolvent and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference....

*First Nat'l Bank of Boston v. Nichols*, 294 Mass. 173, 183 (1936).

Thus, given the allegations of insolvency, which must be viewed in Scotts' favor at this stage, Scotts need not be a "judgment creditor" in order to maintain this action. Scotts is entitled to utilize the "traditional" reach and apply action.

### 2. *As Geiger has acknowledged its debt in writing, there is a statutory basis for a "reach and apply" injunction*

Geiger's second argument, relating to the statutory reach and apply action, fares no better. Geiger posits that the statutory reach and apply remedy is not available here because there is no established "debt." However, a fair reading of the cases underlying that proposition make clear that they do not apply to the instant case, where Geiger has already acknowledged in writing that it owes a debt of $1,359,431.62.[3]

The line of authority that a statutory reach and apply action requires the establishment of an "indebtedness to the plaintiff" has its genesis in the case of *H.G. Kilbourne Comp. v. Standard Stamp Affixer Comp.*, 216 Mass. 118 (1913). *Kilbourne* involved the question of whether the reach and apply remedy extended to claims for breach of an executory contract where the amount of potential damages was wholly incapable of being ascertained. *Id.* at 119. The Court noted that the reach and apply statute was remedial in nature and thus to be broadly construed. *Id.* at 120. The Court also noted that "debt" is to be construed broadly and would logically include not only liquidated demands where there is an express or implied promise to pay, but also situations where, if the debtor has made a promise to pay, the precise amount due is capable of calculation from extraneous facts. *Id.* at 121. In short,

> a liability, although not reduced to a certainty and hence in that sense unliquidated, nevertheless may be a debt, provided that the consideration is executed and there is an express promise to pay

---

[3] As already noted, for purposes of deciding this motion to dismiss, the court must credit the allegations of the Complaint, and the document appended as Exhibit A thereto. Those allegations establish, in Geiger's own words, the fact and amount of the debt.

6

> and the precise sum of money due may be ascertained by simple mathematical calculation from known facts.

*Kilbourne*, 216 Mass at 121. Thus, *Kilbourne* itself stands simply for the proposition that the statutory reach and apply remedy should not be used to secure a debt that is uncertain and incapable of being calculated with any specificity.

The cases principally cited by Geiger do nothing to change the essential holding of *Kilbourne*. In *In re rare Coins*, the court cited *Kilbourne* for the proposition that 'debt' does not "include the simple possibility of being found responsible in damages for the breach of an executory contract where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered." *In re Rare Coins*, 862 F.2d at 904 (quoting *Kilbourne*, 216 Mass. at 122). As already discussed at length above, the holding of *Kilbourne* is somewhat more precise.

In *Hunter v. Youthstream Media Networks, Inc.*, 241 F. Supp.2d 52, 58 (D. Mass. 2002), the court simply noted that while *In re Rare Coins* does not necessarily foreclose the use of reach and apply to all contract claims, it appears to do so in cases where the amount of liability is "hotly contested" and issues of fact remain to be resolved.

At the motion to dismiss stage, the issue of liability is not "hotly contested" but must instead be resolved in favor of Scotts. Moreover, given Geiger's written acknowledgement of its indebtedness to Scotts, it is difficult to imagine how the issue would be "hotly contested" during the course of any litigation.[4]

---

[4] The case of *Consolidated Ordinance Co. v. Marsh*, 227 Mass. 15, 22 (1917), cited to by Geiger presented facts very different from those present here. In *Consolidated Ordinance*, the Court was troubled by a plaintiff electing first to proceed in the district court in Massachusetts in order to gain a jury trial right and have the ability to force out-of-state witnesses into a deposition, while simultaneously proceeding in state court in Massachusetts to avail itself of any additional state court remedies. Here, Scotts had little choice. The contractual dispute was subject to an arbitration clause calling for the arbitration to take place in Ohio, while the only known assets available to pay Geiger's acknowledged debt are located in Massachusetts. Scotts is not "forum shopping" to gain any unfair advantage, but rather simply reacting to the facts presented in a reasonable and efficient manner.

### 3. *As Massachusetts law expressly permits the reach and apply remedy on these facts, Fed.R.Civ.P. 64 is not implicated*

Once again selectively quoting from the relevant body of law, Geiger cites to a portion of Federal Rule of Civil Procedure 64 in support of its argument that this Court does not even have the power to entertain an action such as this. However, the entire text of Rule 64, along with other Rules touching on the specific subject of equitable attachments and securing of assets, make clear that this cause of action is proper.

Rule 64 states as follows:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. **The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action.**

Fed.R.Civ.P. 64 (emphasis added). Thus, the complete text of Rule 64 makes clear that a federal court has the power to entertain an action for "attachment" or any "equivalent remedy" brought in an "independent action."

More importantly, Rule 64 does not cover all requests for attachments or injunctions. It is well-recognized that Rule 64 is not the only aspect of the Federal Rules of Civil Procedure dealing with restraining orders and attachments.

> Rule 64 was not intended to embrace all provisional remedies. Rule 65, for example, deals with the practice applicable to the equitable injunctive remedy. Under Rule 65, the court will issue,

8

>upon a sufficient showing of urgency, a temporary restraining order without a hearing, and in matters of exigency, even without notice to the adverse party.

13 JAMES W.M. MOORE, MOORE'S FEDERAL PRACTICE 3d, § 64.18[1] (2003) (hereinafter "Moore's Federal Practice"). In the context of an order enjoining the sale and/or distribution of assets, courts have noted that it may be proper to look at the injunctive remedies of Rule 65, rather than Rule 64. *See, e.g., In re DeLorean Motor Comp.*, 755 F.2d 1223, 1227 (6th Cir. 1985) (where court order is not intended to secure assets to satisfy a judgment ultimately to be entered in that case, it is appropriate to look at Rule 65 in determining whether the injunction was valid).

Of course, Geiger completely ignores Rule 65. Under that rule in diversity of citizenship cases, state law controls the issue of whether injunctive relief is warranted. *See, e.g., Lauf v. E.G. Shinner & Co.*, 303 U.S. 323, 327-28, 58 S.Ct. 578, 82 L.Ed 872 (1938); *see also* Moore's Federal Practice, § 65.07[2]. In a case such as this, where Scotts asserts in essence an equitable lien on the assets being held in escrow, injunctive relief is warranted under Massachusetts law as previously discussed. *See, e.g., Nile v. Nile*, 432 Mass. 390, 398 (2000) (noting that request under M.G.L. ch. 214, § 3(6) is one seeking equitable relief).[5]

III. CONCLUSION

Scotts is entitled to maintain this action seeking to secure the only known asset that may be available from which it can satisfy the $1,359,431.62 debt that Geiger has acknowledged in writing that it owes, yet has refused to pay for more than a year.

---

[5] While it is at the moment unclear whether this rule would apply to this case, if Geiger ultimately contends that it is not subject to personal jurisdiction in Massachusetts, Federal Rule of Civil Procedure 4(n) would come into play. Rule 4(n) specifically provides that where a federal court does not have jurisdiction over the defendant, but there are assets of that defendant located within the district in which the court sits, the court may exercise jurisdiction over the assets "in the manner provided by the law of the state in which the district court is located." *See* Fed.R.Civ.P. 4(n)(2). In any event, Rule 4 provides an indication that federal courts have broad equitable powers to utilize state law remedies relating to the securing of assets.

## REQUEST FOR ORAL ARGUMENT

Plaintiff, The Scotts Company, hereby requests, pursuant to Local Rule 7.1(D), that the Court conduct a hearing on this motion prior to issuing any decision, as it believes that such oral argument will assist the Court in deciding this motion.

THE SCOTTS COMPANY

By its Attorneys,

_____
Gregory T. Arnold (BBO# 632738)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, Massachusetts 02111
Tel (617) 856-8200
Fax (617) 856-8201

Dated: January 21, 2004

> I, Gregory T. Arnold, hereby certify that on this 21st day of January, I served the foregoing pleading on counsel for defendant, via first-class mail, postage pre-paid.
>
> _____
> Gregory T. Arnold

#1251282 v\1 - arnoldgt - qth%01!.doc - 24091/1